## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MINDY E. KLEINFELTER,** | : | **CIVIL ACTION NO. 1:20-CV-819** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **LOUIS DEJOY, POSTMASTER** | : | |
| **GENERAL, UNITED STATES** | : | |
| **POSTAL SERVICE,** | : | |
| | : | |
| **Defendant** | : | |

## <u>MEMORANDUM</u>

Plaintiff Mindy E. Kleinfelter advances a claim pursuant to the Equal Pay Act, 29 U.S.C. § 206(d), against her employer, the United States Postal Service ("Postal Service"). The Postal Service moves for summary judgment. We will deny the Postal Service's motion.

## I.   <u>Factual Background & Procedural History</u>[1]

### A.   **Postal Service Pay Policies**

Kleinfelter has worked for the Postal Service in several positions since 2001, most recently as a labor relations specialist. (<u>See</u> Doc. 20-12, Kleinfelter Dep. 9:16-

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. L.R. 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. <u>Id.</u> Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (<u>See</u> Docs. 20, 22). To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

10:7; Doc. 20-6, Gaines Dep. 16:21-17:8).  The Postal Service sets certain policies
regarding promotional salary increases and the minimum and maximum allowable
percentages that its employees receive.  (See Docs. 20-2, 20-3, 20-4).  Relevant to this
litigation, the Postal Service's Chief Human Resources Officer ("CHRO") issued a
letter in May 2009 limiting promotional pay increases from an original range of "3 to
10 percent" to a new "maximum of 8 percent."  (See Doc. 20-2 at 1).  Any
promotional increase above 8 percent required approval by the Compensation and
Benefits Director, unless: (1) a higher increase was "necessary to bring the salary to
the minimum of the new grade," or (2) for supervisory positions, "when a higher
increase is necessary to bring it to the minimum salary rate."  (See id.)  Requests
otherwise made to the CHRO needed "clear justification for exceeding" the 8-
percent maximum.  (See id.)

In June 2011, the CHRO issued a second letter referencing the May 2009
restriction.  (See Doc. 20-3 at 1).  Noting that the Postal Service's "fiscal health . . .
continues to be at risk," the letter limited salary increases to "3 to 5 percent for
promotions" and "no more than 8 percent" for any employee promoted more than
once in one year.  (See id.)  Any increases exceeding these lower thresholds also
required Compensation and Benefits Director approval, and the 2011 letter
delineated the same narrow exceptions as the May 2009 letter.  (See id.)

The CHRO issued a third letter in June 2015.  (See Doc. 20-4).  This letter did
not provide a cap on promotional pay, but instead stated such increases would "be
determined based on two factors: Distance from position's maximum salary, and the
number of grades being promoted."  (See id. at 1).  It further established an overall

limit of 25 percent on "total promotion pay percentage increases within a 52 week
period." (See id.)  The 2015 letter contains no language about the process for
exceeding a threshold or obtaining Compensation and Benefits Director approval.
(See id.)

According to several Postal Service employees, these promotional pay caps
have generated salary disparities based on the timing and number of promotions.
Lani Lownsbery, a labor relations specialist, stated she believed she was
"underpaid because of the way [she] came up through the system," noting she was
promoted three levels but only received a 3-percent raise. (See Doc. 20-9,
Lownsbery Dep. 28:19-29:9).  Lownsbery stated she has been told "small steps" are
helpful "to move up and get each percentage raise as you can." (See id. at 28:19-
29:21).  Cody Bennett, also a labor relations specialist, noted he believed an
employee who "skip[s] a step" during promotion would also "skip a percentage
increase." (See Doc. 20-8, Bennett Dep. 23:22-25:10).

In addition to promotions, Postal Service employees can also receive pay
increases through a "pay for performance" or "National Performance Assessment"
("NPA") system. (See Gaines Dep. 80:10-81:3; Bennett Dep. 20:19-21:7; Doc. 20-5,
Kirchner Dep. 48:16-49:9).  Kirchner testified that the Postal Service "gives a group
of employees a certain goal" and employees are then "graded on" their
performance at the close of the fiscal year. (See Kirchner Dep. 49:3-6).  That grade
translates to a pay increase the following year. (See id. at 49:6-9).  NPA pay
increases "are based on a group's performance" rather than any individual's
performance. (See Doc. 20 ¶ 18; Doc. 22 ¶ 18).  The record does not specify how

employees are grouped for purposes of the NPA and corresponding pay-for-performance increase, and the parties did not submit any objective data or charts illustrating the grades or group pay increases for any given year.

When a labor relations specialist position becomes available, a vacancy is posted in the Postal Service's online job listing system. (See Kirchner Dep. 22:7-11). Lyle Gaines, as the labor manager for the Central Pennsylvania District, then interviews and rates candidates and makes a hiring recommendation to Barbara Kirchner, as manager of human resources. (See id. at 22:11-20). If Kirchner approves the selection, an individual at Postal Service headquarters decides the salary for the incoming labor relations specialist. (See id. at 22:19-23:4). Kirchner stated that the hiring manager does not select "how much of an increase" to award an incoming labor relations specialist. (See id. at 23:5-7). Instead, Postal Service policy requires the manager to match the employee's current salary to a "salary chart" that provides "a range of salaries" for the employee's new position, and also consider "how many levels" the employee will be promoted to begin the new position. (See id. at 24:7-21). The Postal Service's CHRO sets a salary range for each position, and managers must award salary increases that fall within these guidelines. (See id. at 45:2-17).

Per Kirchner, there is "no room for any kind of negotiation" in salary increases due to the salary charts set by the Postal Service. (See id. at 45:18-46:2). Kirchner also noted, however, that Kleinfelter's process may have been different because "different salary regulations [were] in effect" and "the process is different today than it was" when Kleinfelter was promoted. (See id. at 23:5-25).

Additionally, Kleinfelter's coworker Bennett testified that he "negotiated for higher percentages" each time he received a raise.  (See Bennett Dep. 24:20-23).

### B.    Labor Relations Specialist Position

Labor relations specialists are tasked with "writing discipline, listening to grievances, building case files, [and] administrative work" related to Postal Service employee issues.  (See Kirchner Dep. 21:5-12).  Labor relations specialists also assist with "military questions, back pays, [and] threat assessments."  (See Doc. 20-7, White Dep. 14:23-15:5).  A labor relations specialist does not need management experience and does not supervise other employees.  (See Kirchner Dep. 25:25-26:22).  While the labor relations specialists in Kleinfelter's department "cover different territories," they all perform the same job duties and have the same responsibilities.  (See id. at 21:21-22:2; Bennett Dep. 13:16-14:5; Lownsbery Dep. 13:8-14).  In other words, since all labor relations specialists meet the requirements for the "same job description," they all perform the "same job."  (See Gaines Dep. 45:14-46:25, 52:9-12).

Kleinfelter's direct supervisor during the relevant time period was Gaines.  (See Kirchner Dep. 19:22-20:6).  Gaines hired Kleinfelter in 2014 for her current position.  (See Gaines Dep. 16:21-17:8).  Gaines reports further up the chain to the manager of human resources.  (See Kirchner Dep. 19:11-24).  Kirchner filled that role in central Pennsylvania until March 2018.  Thereafter, Shawn White took over from July 2018 until August 2020.  (See id. at 10:12-15, 12:15-17, 18:18-24; White Dep. 12:15-21, 14:1-9).

### C.    Individual Employee Salary Histories[2]

Kleinfelter received a promotion to EAS-17 as a customer service supervisor in March 2010.  (See Kleinfelter Dep. 13:8-24).  Her January 2011 PS-Form 50 indicates a "supv customer services" title, grade of 17, and salary of $58,357 in Hummelstown.  (See Doc. 22-6).  A PS-Form 50 is a summary document that provides Postal Service employee data such as grade, salary, leave, and other information.  (See Kirchner Dep. 26:23-27:9).  In January 2014, Gaines hired Kleinfelter as a labor relations specialist and she received a promotion to EAS-19.  (See Kleinfelter Dep. 13:25-14:5; Gaines Dep. 16:21-17:8).  Her January 2014 PS-Form 50 notes her grade is 19 and lists her base salary as $60,108 in the Central Pennsylvania District.  (See Doc. 22-7).  The remarks for the 2014 promotion do not indicate any particular percentage increase, (see id.), but Kleinfelter testified she

---

[2] Kleinfelter denies the overwhelming majority of the Postal Service's factual statements.  (See generally Doc. 22).  Roughly half of Kleinfelter's denials allege that certain of the Postal Service's evidentiary submissions were not produced during discovery—viz., Barbara Kirchner's and Cynthia Allen's affidavits regarding (1) Postal Service pay policies and (2) salary histories of Kleinfelter and other labor relations specialists.  (See Doc. 22 ¶¶ 9-12, 14, 15, 17, 38-68).  The Postal Service does not directly respond to Kleinfelter's allegations, arguing instead that Postal Service pay policies were produced in discovery, and that these policies squarely account for the gap in pay.  (See generally Doc. 25).  Federal Rule of Civil Procedure 37 states, inter alia: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless."  See FED. R. CIV. P. 37(c)(1); see also Nicholas v. Pa. State Univ., 227 F.3d 133, 148 (3d Cir. 2000) (providing four-factor test to decide whether such evidence should be excluded as a sanction).  Without a clear record on the correlation between Postal Service policy and Kleinfelter's actual pay, and mindful that we must construe the record in Kleinfelter's favor, we will not consider the affidavits of either Kirchner or Allen in resolving the present motion.

received a 3-percent raise, (see Kleinfelter Dep. 55:3-11).  Kleinfelter's most recent PS-Form 50 from January 2020 reflects a salary of $68,685.  (See Gaines Dep. 43:7-64:8).

Kleinfelter's male coworkers brought in higher salaries during the same time period.  For example, Bennett works as a labor relations specialist.  (See Bennett Dep. 8:23-9:6).  Bennett's January 2018 PS-Form 50 indicates a "supv customer services" title, grade of 17, and salary of $64,095 in York.  (See Doc. 22-2).  His March 2018 PS-Form 50 reflects a position change to "postmaster," grade of 18, reassignment to East Petersburg, and base salary of $70,505, with remarks noting Bennett received a 10-percent increase in pay from the previous year "under pay promotion policy effective 6/13/15."  (See Doc. 22-3).  Bennett received another pay increase in September 2018 due his position as postmaster, with his new salary set at $71,915 "per 2018 postmaster pay package."  (See Doc. 22-4).  A November 2019 PS-Form 50 for Bennett indicates his promotion to a labor relations specialist at grade 19, with a salary of $77,668 and his move to the Central Pennsylvania District.  (See Doc. 22-5).  The remarks note this new salary level reflected an increase of 8 percent.  (See id.)  During Bennett's promotion process, Gaines conveyed Bennett's request for a 10-percent raise, but White, as manager of human resources, denied Bennett's request.  (See White Dep. 16:22-17:23).  Finally, Bennett's salary in January 2020 increased to $79,106.  (See Gaines Dep. 41:10-22).

Zachary Ward's work history follows a similar trajectory.  In January 2017, his PS-Form 50 indicates a "supv customer services" title, grade of 17, and salary of $64,946 in the Frankford, Delaware office.  (See Doc. 22-8).  Ward's PS-Form 50 in

November of that year indicates a transfer to the South Mills, North Carolina location and a promotion to postmaster, grade 18, along with a 5-percent salary increase to $68,193, and remarks noting he received a 5-percent increase in pay "under pay promotion policy effective 6/13/15." (See Doc. 22-9). Two months later, he received a small salary increase in the same position to $69,492. (See Doc. 22-10). Ward received another pay increase in September 2018 due his position as postmaster, with his new salary set at $70,882 "per 2018 postmaster pay package." (See Doc. 22-11). Ward received a reassignment to Colorado in November 2018 and received a promotion to grade 19 as a labor relations specialist, with a commensurate 5-percent raise to $74,426. (See Doc. 22-12). Ward was reassigned again in March 2019, this time to the Central Pennsylvania District, and his pay increased to $75,844. (See Doc. 22-13). As of January 2020, Ward's salary as a labor relations specialist was $77,361. (See Doc. 22-14). Gaines made the decision to hire both Bennett and Ward as labor relations specialists. (See Gaines Dep. 35:23-24, 49:24-25).

Kleinfelter's female coworkers working as labor relations specialists also brought in different salaries. Lownsbery was reassigned to work as a labor relations specialist in early 2018. (See Lownsbery Dep. 11:17-23). Lownsbery's PS-Form 50 for January 2018 notes her position in labor relations in the Central Pennsylvania District, grade 19, salary of $69,315, and description that she moved "to lower lvl or band." (See Doc. 22-15). According to Lownsbery, she "downgraded into the position" and therefore her salary remained the same as her prior position. (See Lownsbery Dep. 25:20-26:8). In January 2020, Lownsbery

received a pay increase to $70,701 as a labor relations specialist. (See Lownsbery Dep. 19:13-20:1).

Lisa Ebner also works with Kleinfelter. (See Doc. 20-10, Ebner Dep. 9:21-10:8). In January 2018, Ebner worked as a postmaster, grade 20, with a salary of $67,990. (See Doc. 22-16). Ebner's April 2019 PS-Form 50 indicates her position as labor relations specialist in the Central Pennsylvania District, grade of 19, and the same salary of $67,990, with a note that Ebner had moved "to lower lvl or band" to become a labor relations specialist. (See Doc. 22-17; Ebner Dep. 20:24-21:21). Ebner's January 2020 PS-Form 50 reflected a salary of $69,350. (See Ebner Dep. 17:8-23).

Laurie McKinsey had the longest labor-relations tenure of Kleinfelter's coworkers, from 2007 until December 2018. (See Doc. 20-11, McKinsey Dep. 10:5-9, 10:23-11:6). By 2018, McKinsey had reportedly "maxed out at a [grade] 19" salary and made between $80,000 and $90,000 per year. (See id. at 17:22-27, 22:21-23:12). McKinsey stated she "hit every step" between grades 15 and 19 and worked as a grade 19 employee "for quite some time" to obtain her high salary. (See id. at 23:17-24, 37:20-38:4).

As of January 2020, the labor relations specialists in the Central Pennsylvania District, all grade 19, brought in the following salaries:

- Mindy Kleinfelter: $68,685, (see Gaines Dep. 43:7-64:8);

- Cody Bennett: $79,106, (see id. at 41:10-22);

- Zachary Ward: $77,361, (see Doc. 22-14);

- Lani Lownsbery: $70,701, (<u>see</u> Lownsbery Dep. 19:13-20:1); and

- Lisa Ebner: $69,350, (<u>see</u> Ebner Dep. 17:8-23).

Kleinfelter is the most senior labor relations specialist.  (<u>See</u> Gaines Dep. 49:19-23).

She covered Gaines' position when he was absent on details or work assignments in

other geographic areas.  (<u>See</u> <u>id.</u> at 28:8-18, 66:23-67:1).  In 2020, however,

Kleinfelter made the lowest salary in her department when compared with Bennett,

Ward, Lownsbery, and Ebner.  In fact, *all* of the females in the labor relations

department (Kleinfelter, Lownsbery, and Ebner) brought in lower salaries in 2019

and 2020 than the two males did (Bennett and Ward).

### D.    Procedural History

Kleinfelter filed the instant lawsuit in May 2020, alleging claims pursuant to

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as well as the Equal

Pay Act ("EPA"), 29 U.S.C. § 206(d).  During discovery, however, Kleinfelter

stipulated that the complaint only encompasses an EPA claim.  (<u>See</u> Doc. 21 at 1 n.2;

Kleinfelter Dep. 22:7-23:20).  The Postal Service moves for summary judgment.  The

motion is fully briefed and ripe for disposition.

## II.   <u>Legal Standard</u>

Through summary adjudication, the court may dispose of those claims that

do not present a "genuine dispute as to any material fact" and for which a jury trial

would be an empty and unnecessary formality.  FED. R. CIV. P. 56(a).  The burden of

proof tasks the nonmoving party to come forth with "affirmative evidence, beyond

the allegations of the pleadings," in support of its right to relief.  <u>Pappas v. City of</u>

Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett,
477 U.S. 317, 322-23 (1986).  The court is to view the evidence "in the light most
favorable to the non[]moving party and draw all reasonable inferences in that
party's favor."  Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014).
This evidence must be adequate, as a matter of law, to sustain a judgment in favor
of the nonmoving party on the claims.  Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
587-89 (1986).  Only if this threshold is met may the cause of action proceed.  See
Pappas, 331 F. Supp. 2d at 315.

## III.   **Discussion**

The EPA provides that "[n]o employer . . . shall discriminate . . . between
employees on the basis of sex by paying wages to employees in such establishment
at a rate less than the rate at which he pays wages to employees of the opposite
sex."  See 29 U.S.C. § 206(d)(1).  We apply a two-step burden-shifting test to analyze
EPA claims.  First, a plaintiff must establish a *prima facie* case by showing that
employees of the opposite sex are paid differently for performing equal work.  See
Stanziale v. Jargowsky, 200 F.3d 101, 107 (3d Cir. 2000).  The burden of persuasion
then shifts to the defendant employer to demonstrate one of four enumerated
affirmative defenses: "(i) a seniority system; (ii) a merit system; (iii) a system which
measures earnings by quantity or quality of production; or (iv) a differential based
on any other factor other than sex."  See 29 U.S.C. § 206(d)(1); see also Stanziale,
200 F.3d at 107 & n.6.

To establish a *prima facie* case, the plaintiff must demonstrate that employees of the opposite sex were paid differently for performing "work of substantially equal skill, effort[,] and responsibility, under similar working conditions."  See Stanziale, 200 F.3d at 107; see also 29 C.F.R. § 1620.14(a).  More simply, the plaintiff must show that she and her comparator share a "common core of tasks."  See Brobst v. Columbus Servs. Int'l, 761 F.2d 148, 156 (3d Cir. 1985).  This inquiry does not focus on the title of the position, job classification, or job description; rather, a plaintiff must prove her case through evidence of actual job content and work performed.  Id. at 155.

If the plaintiff makes out a *prima facie* case, the defendant must prove its affirmative defense "so clearly that no rational jury could find to the contrary."  See EEOC v. Del. Dep't of Health & Soc. Servs., 865 F.2d 1408, 1414 (3d Cir. 1989); Stanziale, 200 F.3d at 107.  This burden is higher than the burden of production that a defendant must meet pursuant to a Title VII action, since "the employer bears the burden of proof at trial."  See Stanziale, 200 F.3d at 107; Puchakjian v. Township of Winslow, 520 F. App'x 73, 77 (3d Cir. 2013) (nonprecedential).  Under the EPA, an employer's evidence related to an affirmative defense must demonstrate "not merely that the employer's proffered reasons *could* explain the wage disparity, but that the proffered reasons *do in fact* explain the wage disparity."  See Stanziale, 200 F.3d at 107-08 (citing Del. Dep't of Health, 865 F.2d at 1415); see also EEOC v. Md. Ins. Admin., 879 F.3d 114, 123 (4th Cir. 2018) (citing Stanziale, 200 F.3d at 107-08) (holding defendant's "facially gender-neutral compensation system" did not shield it from EPA liability at summary judgment stage because defendant still had

discretion to "place the claimants and the comparators on different steps of the pay scale at different starting salaries" based on sex).

Kleinfelter has established a *prima facie* EPA violation by demonstrating unequal pay for equal work.  See Stanziale, 200 F.3d at 107.  Kirchner, Gaines, Bennett, Lownsbery, and Ebner all testified the labor relations specialists in the Central Pennsylvania District have the same responsibilities.  (See Kirchner Dep. 21:18-22:2; Gaines Dep. 45:14-46:25, 52:9-12; Bennett Dep. 13:16-14:5; Lownsbery Dep. 13:8-14; Ebner Dep. 10:22-11:13).  Each individual noted that duties could vary depending on the specific territory a labor relations specialist covered, but confirmed all labor relations specialists had the same or substantially similar everyday tasks.  (See Kirchner Dep. 21:18-22:2).  There is no record evidence to indicate any particular labor relations specialist role required more skill, effort, or responsibility, or that their working conditions were dissimilar.  Cf. Stanziale, 200 F.3d at 107; 29 C.F.R. § 1620.14(a).  Thus, Kleinfelter has adduced sufficient evidence to make a *prima facie* showing that she and her coworkers shared a "common core of tasks."  See Brobst, 761 F.2d at 156.  Furthermore, it is undisputed that Kleinfelter's male coworkers garnered higher salaries than Kleinfelter did in the labor relations specialist position.  In January 2020, Kleinfelter made $68,685, (see Gaines Dep. 43:7-64:8), while Bennett made $79,106, (see id. at 41:10-22), and Ward made $77,361, (see Doc. 22-14).

According to the record, Gaines hired Kleinfelter as a labor relations specialist, and Kleinfelter received her promotion to grade 19 in January 2014.  (See Gaines Dep. 16:21-17:8; Doc. 22-7).  This promotion resulted in a raise of 3 percent.

(See Kleinfelter Dep. 25:24-25).  The Postal Service argues that summary judgment is proper because the salaries at issue were determined on a "non-discretionary" basis, thereby leaving no room to discriminate.  (See Doc. 21 at 6-10).  In support, the Postal Service cites to the May 2009 and June 2011 CHRO policy letters regarding salary increases, claiming the "maximum raise" for a one- or two-level promotion was only 3 percent.  (See Doc. 20 ¶¶ 8-10).  The June 2011 CHRO letter states "promotional increases must be limited to . . . [s]alary increase of 3 to 5 percent for promotions."  (See Doc. 20-3).  But contrary to the Postal Service's claim, there is no reference to a 3 percent-maximum for a single- or double-grade promotion, and a 5 percent-maximum for a three-grade promotion.  Furthermore, the June 2011 letter *does* allow for discretion, as it provides for CHRO review and approval if any promotional increase exceeds the stated thresholds.  (See id. at 1). Gaines therefore could have decided to assign Kleinfelter the lowest percentage raise available based on her sex, when he had the option to assign her a 5-percent raise, or requested a higher percentage from his superiors, based on the 2011 CHRO policy letter.  See Md. Ins. Admin., 879 F.3d at 123.

Additionally, there is conflicting testimony of various Postal Service employees on the negotiability of promotional salary raises.  According to Kirchner, there is presently "no room" to negotiate for a particular percentage raise.  (See Kirchner Dep. 45:18-46:2).  But Kirchner admitted that Kleinfelter's promotion occurred under different regulations.  (See id. at 23:5-17).  And despite Kirchner's claim that salaries were not negotiable, White conceded that Bennett's request for a raise of 10 percent, rather than 8 percent, was relayed upon his promotion to labor

relations specialist.  (<u>See</u> White Dep. 16:22-17:23).  Finally, Bennett himself testified he always negotiated for higher pay during his promotional periods.  (<u>See</u> Bennett Dep. 24:20-23).  As a result, while the promotional salary increase caps "*could* explain the wage disparity," the Postal Service has not demonstrated that they "*do in fact* explain the wage disparity" between Kleinfelter and her male coworkers.  <u>See</u> <u>Stanziale</u>, 200 F.3d at 107-08 (citing <u>Del. Dep't of Health</u>, 865 F.2d at 1415).  For these reasons, summary judgment is not warranted.

## IV.  <u>Conclusion</u>

We will deny the Postal Service's motion (Doc. 19) for summary judgment. An appropriate order shall issue.

/S/ C<small>HRISTOPHER</small> C. C<small>ONNER</small>
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:     March 1, 2022